MANN et al. v. ABRAM COX STOVE CO.

(Supreme Court, Appellate Division, First Department. February 18, 1916.)

1. PRINCIPAL AND AGENT ☞33—CONTRACTS—RESCISSION—GROUNDS.

Under a contract whereby plaintiff, who had been acting as sales agent for the defendant on a commission basis and held a number of stoves belonging to defendant on consignment, became defendant's sales agent in certain territory at $500 a month, was required to make a monthly report of all goods in his warehouse, where the goods carried over by plaintiff under the former contract were never rebilled to it under the latter contract, and where it did not appear that plaintiff was notified until after the making of the latter contract that the goods carried over had been charged to its account under the latter contract, a failure to report with respect to the goods held under the former contract did not justify the cancellation of the latter contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 54; Dec. Dig. ☞33.]

2. PRINCIPAL AND AGENT ☞33—SALES CONTRACT—RESCISSION—GROUNDS.

Under such contract, plaintiffs' failure to furnish a monthly report in writing and to furnish duplicate bills of sale, when they had received only sample stoves on or prior to the day when defendant attempted to cancel and when there had been no sales under the contract, did not justify defendant in terminating it.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 54; Dec. Dig. ☞33.]

3. PRINCIPAL AND AGENT ☞41—CONTRACTS—CANCELLATION—PLEADING.

In such case, where the plaintiffs' failure to report sales was not pleaded, it could not justify the cancellation sought by defendant.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. ☞41.]

Scott, J., dissenting.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, New York County.

Action by Samuel Mann and others against the Abram Cox Stove Company, with counterclaim by defendant. Judgment for defendant, and plaintiffs appeal. Judgment and order reversed, and new trial granted.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and PAGE, JJ.

Leon Sanders, of New York City (L. E. Schlechter, of New York City, on the brief), for appellants.

Charles D. Folsom, of New York City, for respondent.

LAUGHLIN, J. This is an action to recover damages for breach of contract. On the 27th day of January, 1913, the plaintiffs, who were copartners conducting a wholesale furniture and stove business under the name of Mann Bros., and defendant, a corporation organized under the laws of Pennsylvania and engaged in manufacturing and selling stoves and ranges, made an agreement in writing by which defendant employed plaintiffs for one year from February 1, 1913, as sales agents of "a designated part of" its products in certain counties of this state and other defined territory in New Jersey and Connecticut. The office, showroom, and warehouse of the plaintiffs were at No. 250 South street, New York. Defendant's plant and office were at Philadelphia. The plaintiffs were then acting as sales agents for the defendant pursuant to a former contract. The former contract was to be superseded by the contract in question, which, however, contains no reference thereto. The plaintiffs agreed not to represent any other line of stoves or ranges, and to have in their warehouse at all times a sufficient stock "to supply orders from local territory," and to make all deliveries free of charge for hauling and carting in certain territory; and it was agreed that defendant should have the privilege of having an office and a showroom in any part of the second floor of plaintiffs' warehouse, but that any improvements made by defendant with respect to such office or showroom should be at its own expense. The contract contained no other express provision bearing on the extent to which plaintiffs should order stoves, but defendant agreed "to ship all stoves and ranges to Mann Bros.' warehouse at 250 South street, New York, freight prepaid," and to pay plaintiffs a specified price per range or stove for cartage from the dock in New York to their warehouse, and to allow plaintiffs the freight charges "on all goods shipped to territory outside of New York City." It was contemplated that plaintiffs might take orders for direct shipment from defendant's factory in Philadelphia to customers, and might also sell and deliver from the stock on hand in their said warehouse. It was accordingly agreed that all goods shipped to plaintiffs' warehouse would be billed to plaintiffs "and carried on a consigned account," and remain the property of the defendant until sold and delivered by plaintiffs to their customers, and should be insured at the expense and for the benefit of defendant; and with respect to orders for direct shipment and billing to the customers by defendant, the defendant reserved the privilege of declining the order, in which

event it agreed to notify plaintiffs immediately. The minimum prices at which sales were to be made were to be fixed from time to time by defendant, and a schedule thereof to regulate sales until changed was annexed to the agreement. The plaintiffs agreed to enter the employ of defendant and to use their best efforts to sell its goods in the territory assigned them, and to accept in full for their "salary and other compensation," other than the cartage for which they were to be paid, the sum of $6,000 per year to be paid in monthly installments; but, in the event that the sales made by plaintiffs during the contract period exceeded $40,000, defendant agreed to pay plaintiffs "for additional remuneration" a commission of 15 per cent. on the excess.

The plaintiffs assumed responsibility for the collection of and liability for the payment of "all accounts covering goods" shipped from any consignment of goods to them, and they agreed to render bills *immediately* to customers to whom goods were delivered from their warehouse and to forward to defendant *weekly* duplicate copies of the bills so rendered. Defendant agreed to render invoices to plaintiffs covering all deliveries from said warehouse "as reported" by plaintiffs, and such charges were to be carried on a "Mann Bros. general account" and a corresponding credit issued to the consigned account. The agreement contained a paragraph embodying further provisions as follows:

> "Said Mann Bros. shall make a monthly report on the 1st of each and every month of all goods in their New York warehouse, and any shortage shall be charged to their general account, at the prices quoted. They also agree to make settlement by check on or before the 15th of each mouth, covering all charges of the preceding month to their general account, less a cash discount of 2 per cent."

Plaintiffs also agreed to keep a separate complete set of books "for stove account." The parties entered upon the performance of their obligations under the contract, but on the 29th day of April, 1913, the defendant, by letter, gave notice that it had elected to cancel the contract as of that date on account of "not having received the settlement promised by" plaintiffs in accordance with the contract, and stated that it would arrange to remove its goods from plaintiffs' premises at once. The "*settlement*" referred to in this letter doubtless was the monthly report which the contract required plaintiffs to make. It is claimed that plaintiffs failed to keep a separate set of books for the stove account, but inasmuch as that was not assigned as a ground for cancellation it need not be considered. The monthly installments of $500 each had been paid for two months. This action was brought to recover damages measured by the unpaid monthly installments.

Defendant interposed three counterclaims: (1) For the monthly installment paid March 1, 1913; (2) for goods sold and delivered, which had reference to the goods plaintiffs held as agent and failed to return on demand after cancellation of the contract; and (3) goods sold and delivered, having reference to goods held by plaintiffs under the former contract of agency. The evidence showed that the value of goods held by plaintiffs under the former contract was $258.-60, and under the one in question $901.15, making $1,159.79. These

amounts and interest, aggregating in all $1,264.15, were conceded, and the second counterclaim was deemed to be therefor, and the third counterclaim was withdrawn. The jury allowed a counterclaim for this amount, and disallowed the first counterclaim.

The plaintiffs had been acting as sales agent for the defendant on a commission basis since the latter part of August, 1912, and had sold stoves of the aggregate value of about $3,500. On the 1st of January, 1913, one month before the contract in question became operative, plaintiffs held 257 stoves, of the value of $2,508.15, belonging to defendant, on consignment. It appeared by the testimony of the plaintiff Samuel Mann that on the 3d day of April, 1913, he had an interview with one Lewis, the sales manager of the defendant, with respect to settling the old accounts, and that he told Lewis that the plaintiffs had on hand on the 28th of February, 1913, 194 of these stoves, 115 of which had been returned to defendant in March pursuant to an agreement therefor, leaving in the possession of the plaintiffs at the time of the interview 79 of the stoves, of the value of $988.-90, from which plaintiffs claimed deductions for commissions owing on sales theretofore made under a former contract, and for trade discounts allowed to customers, and for carting and for putting cast iron bands on 40 ranges, and $2 on account of other items, aggregating $209.73, leaving $779.17, the value of the stoves over and above the offset claimed by the plaintiffs, and that the plaintiffs claimed a further offset of $500 due to them on the 1st of April under the contract in question, the first installment, due on March 1st, having been paid, and $275 more for alterations made in the sample showroom in their warehouse for the account of the defendant, and $2.67 for freight paid for the account of the defendant, and $3 paid to the telephone company, aggregating $780.66, which exceeded said surplus representing the value of the stoves by $1.49; that it was agreed between him and Lewis that the old account would be adjusted by offsetting these claims of the plaintiffs against the value of the stoves which the plaintiffs held under the former contract; that Lewis made a pencil memorandum of these items to show to the bookkeeper of the defendant as the basis on which the old account was adjusted.

The testimony of Lewis is not in accord with that of Mann with respect to this interview; but the subsequent dealings between the parties show that the old account was deemed adjusted on that basis. According to the testimony of Mann, at the interview between him and Lewis on April 3d, it was agreed that plaintiffs should retain and pay for the other 63 stoves belonging to the defendant which the plaintiffs held, the value of which was agreed upon the trial to be $258.60. The invoices of the goods consigned by the defendant to the plaintiffs under the contract in question were received in evidence, and they showed an aggregate invoice value of $901.15. It was conceded on the trial that this represented the value of all the stoves received by the plaintiffs from the defendant under the contract in question, and that the value of the stoves received by the plaintiffs under the former contract, and for which they had not accounted, was said sum of $258.60. These two items, representing the two counterclaims for

stoves and ranges on hand and unaccounted for by plaintiffs, aggregating $1,159.75, were accepted as the aggregate of defendant's counterclaim, and at the suggestion of the court they were deemed to constitute its second counterclaim, and defendant's counsel thereupon withdrew its third counterclaim. The interest upon these items of $1,-159.75 was stipulated to be $104.40, making a total of $1,264.15.

The court, in submitting the case to the jury, submitted this counterclaim and defendant's counterclaim for $500, paid by the defendant on the 1st of March for the services rendered by the plaintiffs during the month of February, under instructions to the effect that, if the defendant was justified in terminating the contract on the 29th day of April, the defendant was entitled to recover its said counterclaim of $1,264.-15, and that, if plaintiffs violated the contract during the month of March without the knowledge of defendant, then the defendant would also be entitled to recover the $500, which defendant had allowed the plaintiffs for services during the month of March. The jury disallowed the counterclaim for the $500, but rendered a verdict for the defendant on the other counterclaim. By disallowing the counterclaim for the $500, the jury under these instructions found that the plaintiffs did not violate the contract during the month of March. No question with respect to a violation of the former contract by the plaintiffs was submitted to the jury.

[1] The defendant, however, claimed that it was justified in canceling the contract, both on account of the failure of the plaintiffs to report under the contract in question on the 1st of the month with respect to the goods consigned under that contract, and with respect to the goods on hand under the former contract, on the ground that the defendant had elected to permit the plaintiffs to hold the goods which they received under the former contract as if consigned under the contract in question. On the 28th day of February, 1913, plaintiffs rendered an accounting to defendant as of January 1, 1913, showing a balance of $1,004.50 due and owing by them to the defendant, for which they inclosed their check. The defendant acknowledged this remittance on March 4, 1913, and claimed deductions from the account as stated by plaintiffs of $330.26, for which they asked that plaintiffs send an additional check, and that communication closed with the following:

"With this remittance and the paid freight bills requested, we can check the account to the first of the year, and will rebill the goods carried over to the consigned account in accordance with our new contract."

So far as appears, the defendant never rebilled the goods carried over under the former contract under the contract in question until April 8, 1913. The only evidence of any attempt on the part of defendant to charge the old goods to the new account is a statement under date of March 31st, inclosed to plaintiffs with a letter on April 8, 1913, to which reference will be made presently. Plaintiffs, on March 13th, replied to defendant's letter of March 4th, explaining more fully its accounting on February 28th, from which defendant claimed that deductions should be made, and insisting upon the correctness of the account as rendered, and on the 14th of the same month asked a check.

for the $500 due under the contract in question on the 1st of March. Defendant replied to both of those communications under date of March 14th, reiterating its claims with respect to deductions, and inclosed a check for $57.84, which it claimed was the balance owing to plaintiffs for the payment of the $500 due March 1st, less deductions, and stating that defendant's Mr. Lewis would be in New York the following week, and that the plaintiffs could take the matter up with him at that time. On April 8th defendant wrote plaintiffs, stating that Mr. Lewis had advised it of the result of his interview with them the week before, and that it had decided to allow plaintiffs credit for cash discounts, to which it had previously objected, but could not allow a deduction of $50 claimed for traveling expenses, and was returning the check which it sent to plaintiffs on March 4th, which plaintiffs evidently had returned, and an additional check for the discount, and expressed the hope that this would be satisfactory, and further stated, "We are also inclosing a credit memo covering the goods returned last month, together with a statement showing a list of the consigned goods with which we have you charged," and that it would appreciate a settlement by return mail covering the goods which plaintiffs had disposed of up to the end of March. The credit memo related to the 115 stoves returned, to which reference has already been made. The sales to which this letter referred were sales of goods consigned under the former contract, and for which plaintiffs claim to have made an adjustment with Lewis, as already stated, but which this letter does not appear to recognize. The letter of April 29th canceling the contract appears to base the cancellation on the failure of the plaintiffs to make settlement for the stoves sold under the former contract. Manifestly a breach of the former contract would afford no justification for canceling the later one.

It is claimed that plaintiffs failed to make monthly reports with respect to the old goods on hand, which defendant thus attempted to bring within the new contract; but there is no evidence that plaintiffs were notified until after the 1st of April that those goods had been charged to the new account, and if plaintiffs acquiesced in that they were under no obligation to report the goods until May 1st, before which day defendant canceled the contract. There were many other written communications between the parties between March 1, 1913, when it first became the duty of the plaintiffs to make a report to the defendant with respect to goods on hand under the new contract, and the day on which the defendant canceled the contract, and in none of them is there any complaint of the failure of the plaintiffs to comply with any provision of the contract in question.

The plaintiffs claim to have objected to the course suggested by the defendant of having the goods which plaintiffs held under the former contract deemed held under the contract in question; and Samuel Mann testified that it was agreed at the time the contract in question was signed that defendant would take back 115 of the stoves and that the plaintiffs should endeavor to sell the remainder on the former commission basis. The defendant was well aware of the amount of its goods held by the plaintiffs under the former contract, and I am

of opinion that it could not terminate the contract in question for the failure of the plaintiffs to report under it with respect to the goods held under the former contract. The evidence shows that prior to the 1st day of April, 1913, the plaintiffs had only received from the defendant under the contract in question a single sample of each different kind of stove and range manufactured by defendant which plaintiffs were endeavoring to sell, and that the plaintiffs had made no sale of any stove or range received by them under the new contract, and the preponderance of the evidence shows that the defendant was well aware of this. The plaintiffs were not retail dealers. It was well known to the defendant that they were wholesale dealers, engaged in selling stoves from samples in large quantities. They retained the stoves and ranges shipped to them by defendant under the new contract on exhibition in their sample room or showroom, and none were stored in the warehouse, and were endeavoring to obtain large orders. According to the testimony of Samuel Mann, plaintiffs dealt in lots of 600 at a time. The plaintiffs made no report to the defendant on the 1st of March, or on the 1st of April, and, as already stated, there is no written evidence of a demand for a report, and according to the testimony offered in plaintiffs' behalf which, however, was controverted, there was no verbal demand. Their claim is that there was no occasion for a report, as no sale was made, and that the only stoves they had on hand on either of those occasions were sample stoves.

The court in the charge first left it for the jury to say whether the contract required a monthly report in writing, but later, on counsel for the plaintiffs requesting the court to charge as matter of law that the plaintiffs were not required to make a report in writing, the court refused so to charge, and to this refusal an exception was duly taken. Thus the jury were permitted to find that the contract required a report in writing, and that, even though the defendant was fully aware that no stoves had been sold, and that only sample stoves were on hand, and that these facts had been fully communicated to the defendant through its agent, still plaintiffs were guilty of a breach of the contract, which justified defendant in terminating it, and that is evidently the view the jury took of the case. The jury, after retiring, sent a communication to the court, through their foreman, as follows:

"Will the failure on the part of the complainants to furnish a monthly statement of goods on hand and sales effected furnish in itself a legal reason for the discontinuation of the contract between the parties of this action?"

There was no claim in the notice of cancellation or in the answer that the defendant was justified in canceling the contract for the failure of the plaintiffs to report sales. Evidence of such failure was received over objection and exception duly taken by plaintiffs that it was not within the issues. The jury was then brought into court and instructed that the failure of the plaintiffs to furnish a monthly statement of goods on hand, as provided by the contract, *and their failure to report sales made as provided in the contract, would justify the defendant in terminating the contract.* The court was thereupon requested by counsel for the plaintiffs to charge that if there was

a failure to report on March 1st, and subsequently on April 3d there was a report made, as testified to by one of the plaintiffs, the fact that a report was not made on March 1st would not justify cancellation of the contract, whereupon the court charged that the omission of the plaintiffs to report on the exact date required, if they subsequently reported in accordance with the contract, and a report was received by the defendant, would not justify the cancellation of the contract for the former breach. Counsel for plaintiffs then proceeded to request the court to charge further on the subject, and the court declined, stating that the jury was only brought into court to receive an answer to a particular question.

One of the jurors then asked whether there was a subsequent report made. The justice presiding answered that as he recollected the evidence there was never any monthly report of stock on hand furnished by plaintiffs until after the letter terminating the contract, but that it was claimed by some of the witnesses that on the 3d of April, when Lewis was at the place of business of the plaintiff, the bookkeeper prepared a rough sketch on a scrap of paper, which was subsequently contained in the typewritten report which was sent to the defendant on the 1st day of May, and that notes thereof were taken by Mr. Lewis, and "that report does not contain any report of sales made." On the attention of the court being drawn to the fact that that report did contain a statement of sales made under the former contract, the court modified the instruction given, by saying that it did not contain a duplicate bill of sale as provided by the contract, and that if there were sales made under the contract it was not in compliance with the terms of the contract. Counsel for the plaintiff thereupon drew the attention of the court to the fact that the sales were under the old contract, and excepted to the charge that there was not a written report, and again requested the court to instruct the jury that the plaintiffs were not required to furnish a report in writing. The court declined so to charge, on the ground that the contract required that duplicate bills of sale should be made and sent to the defendant. Thereupon counsel for plaintiffs duly excepted to that part of the charge, and drew the attention of the court to the fact that the failure to furnish duplicate bills of sale was not pleaded, and again requested the court to charge that the plaintiffs were not required to furnish a written report on the 1st of each month. The request was declined, and counsel for plaintiff duly excepted.

[2, 3] I am of opinion that the court erred in allowing the jury to find that the defendant was justified in terminating the contract on account of plaintiffs' failure to furnish a report in writing, and to furnish duplicate bills of sales, when according to the evidence they had received only sample stoves on or prior to April 1st and there had been no sales under the contract in question. Moreover, failure to report sales, not having been pleaded, could not justify the cancellation. Linton v. Unexcelled Fireworks, 124 N. Y. 533, 27 N. E. 406; Spitz v. Keinze, 77 App. Div. 318, 79 N. Y. Supp. 187; Marshall v. Sackett & Wilhelms, 166 App. Div. 141–146, 151 N. Y. Supp. 1045.

It follows, therefore, the judgment and order should be reversed, and new trial ordered, with costs to the appellant to abide the event. Order filed.

CLARKE, P. J., and McLAUGHLIN and PAGE, JJ., concur. SCOTT, J., dissents.